JOHN GLENN MINING COMPANY, Appellee,

v.

OHIO DEPARTMENT OF NATURAL RESOURCES, DIVISION OF MINERAL RESOURCES MANAGEMENT, Appellant.

[Cite as *John Glenn Mining Co. v. Ohio Dept. of Natural Resources, Div. of Mineral Resources Mgt.,* 152 Ohio App.3d 363, 2003-Ohio-1886.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 02 CO 4.

Decided April 7, 2003.

Lawrence Stacey, for appellee.

James Petro, Attorney General, and Robert Eubanks, Assistant Attorney General, Environmental Enforcement Section, Division of Mineral Resources Management, for appellant.

VUKOVICH, Judge.

{¶ 1} Appellant state of Ohio Department of Natural Resources, Division of Mineral Resources Management ("division"), appeals from the orders of the Reclamation Commission ("commission") in regard to the coal mining reclamation performance bond of appellee John Glenn Mining Company ("John Glenn"). The division raises two issues to be decided by this court. First, whether the commission erred in terminating John Glenn's liability despite its finding that John Glenn did not complete reclamation of the mined land. Second, whether the commission erred in ruling to reduce the amount of the bond forfeited and release the minimum bond amount prior to completion of reclamation. For the reasons stated below, the commission's decision is affirmed in part, vacated in part, and remanded for further proceedings according to law and consistent with this opinion.

## STATEMENT OF THE CASE

{¶ 2} John Glenn is a coal mining company. In 1993, a mining and reclamation permit was issued to John Glenn covering 161.4 acres of land in Columbiana County. Pursuant to R.C. 1513.08, prior to issuance of the permit, John Glenn posted a performance bond. The purpose of that bond was to ensure that any land covered in the permit that is mined will be restored to a condition as good as or greater than what it was prior to the mining.

{¶ 3} Of the 161.4 acres, ten acres were mined. However, five of those ten acres were taken over by an industrial recycling operation. John Glenn's duty to reclaim these five acres ceased upon the industrial recycling operation's acquisition of the property. Thus, only the remaining five acres are the subject of this appeal.

{¶ 4} Mining in the subject area concluded in 1994 and reclamation work subsequently began. The statutorily allotted time for reclamation ended in October 1999.[1] The reclamation process is divided into three phases. John Glenn completed Phase I and Phase II of the reclamation process. However, by the end of 1999, John Glenn had not successfully completed Phase III, the final phase of reclamation. The division issued a first notice of violation to John Glenn on April 12, 2001, for failure to complete the work. The time for completion was extended to May 25, 2001. After two more extensions passed without commencement of work, John Glenn fell into noncompliance.

{¶ 5} As a result of the noncompliance, the Chief of Mineral Resources issued a cessation order to John Glenn on August 13, 2001. The order instructed John Glenn to begin reclamation work. John Glenn failed to successfully comply with this order. This failure resulted in a bond forfeiture order, ordering the forfeiture of the performance bond totaling $10,250. The bond on deposit and subject to forfeiture was a combination of a $250 cash bond and $10,000 in letters of credit. In support of his decision, the chief cited Ohio Adm.Code 1501:13–7–06(A)(1), which states in part that forfeiture of the performance bond is necessary when there is a failure to comply with a notice of violation resulting from a failure to reclaim. John Glenn appealed this order to the Reclamation Commission.

{¶ 6} The commission viewed the site and took testimony regarding the extent and quality of reclamation. The commission agreed with the chief's finding that John Glenn had failed to successfully complete Phase III of the reclamation process. It specifically noted the existence of two "barren areas" larger than 3,000 square feet, as well as an erosion gully. The commission also noted that coal fragments are present on the land and are interfering with the

---

1. Ohio Adm.Code 1501:13–9–15.

establishment of vegetation. However, the commission found that the chief's ruling in regard to the amount of the bond to be forfeited was arbitrary, capricious or otherwise inconsistent with law. The commission modified the order of the chief. It reduced the amount of bond to be forfeited from $10,250 to $1,875. The commission further stated that John Glenn's liability ceased and that all remaining monies that were not forfeited were to be released to John Glenn.

{¶ 7} The division timely appeals from the commission's decision. John Glenn failed to file a brief. We may therefore accept the division's statement of facts and issues as correct. App.R. 18(C).

## STANDARD OF REVIEW

{¶ 8} An appellate court reviews a decision by the Reclamation Commission under the very limited standard of review set forth in R.C. 1513.14. *Buckeye Forest Council v. Div. of Mineral Resources Mgmt.*, 7th Dist. No. 01BA18, 2002-Ohio-3010, at ¶ 7, 2002 WL 1371007. R.C. 1513.14 states that the commission's decision must be affirmed unless the appellate court determines that the decision is "arbitrary, capricious, or otherwise inconsistent with law." R.C. 1513.14(A)(3). If the decision does warrant reversal, it must be vacated and remanded to the commission for further proceedings consistent with the judgment of the reviewing court. R.C. 1513.14(A)(3). Due to the limited scope of review, this court proceeds with a presumption that the commission's ruling is valid. R.C. 1513.02 (granting the Division of Mineral Resources the authority to implement the provisions of R.C. Chapter 1513); *Buckeye Forest Council*, 2002-Ohio-3010, at ¶ 7.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 9} "The commission erred by finding [that] an operator is discharged of its duty to reclaim when the state seeks forfeiture of the operator's performance bond as a result of the operator's non-compliance with its R.C. Chapter 1513 statutory duty to reclaim."

{¶ 10} The commission stated, "Upon forfeiture, John Glenn's reclamation liability for these 5 acres effectively ceases." The division argues that this ruling is contrary to the dictates of R.C. Chapter 1513 and Ohio Adm.Code Chapter 1513:13. It contends that such a holding effectually rewrites and/or repeals the provisions on cessation of liability. The division argues that the commission did not have the authority to release John Glenn from liability when it acknowledged that Phase III of the reclamation process was not completed.

{¶ 11} The division's argument is correct; the commission could not release John Glenn from liability until the reclamation process was completed. Ohio Adm.Code 1501:13–7–02(C)(1) states that the period of liability will exist until

three requirements are met. First, all reclamation and restoration work dictated by R.C. Chapter 1513, Ohio Adm.Code Chapter 1501:13, and the provisions of the mining and reclamation plans must be completed. Second, the period of extended responsibility for revegetation that is enumerated in Ohio Adm.Code 1501:13–9–15 has expired. Last, the permittee is released from liability in accordance with Ohio Adm.Code 1501:13–7–05.

{¶ 12} The plain language of Ohio Adm.Code 1501:13–7–02(C)(1) indicates that liability does not cease until all restoration and reclamation work dictated by the statutes, codes, and rules is completed. The reclamation process consists of three phases and is not completed until all phases are completed. Ohio Adm. Code 1501:13–7–05(B). Here, it is undisputed that Phase I and Phase II were completed. However, Phase III was not completed. One of the requirements for successful completion of Phase III is that "the ground cover shall equal or exceed ninety per cent and no single area with less than thirty per cent cover shall exceed the lesser of three thousand square feet." Ohio Adm.Code 1501:13–9–15(G)(3)(b) and 1501:13–9–15(M)(4)(b). The commission and the division both acknowledge that the five acres consist of two barren areas, each of which is greater than 3,000 square feet in size, and one area of erosion. Both the commission and the division concluded that all restoration and reclamation work was not completed. Clearly, the first requirement of Ohio Adm.Code 1501:13–7–02 is not met. The reclamation process was not completed and liability could not be released.

{¶ 13} Ohio Adm.Code 1501:13–7–06 and R.C. 1513.18 also provided further support for our finding that the commission did not have the authority to release liability despite its finding of forfeiture for failure to complete reclamation. Ohio Adm.Code 1501:13–7–06 provides information about bond forfeiture and bond forfeiture orders. Subsection (D) states:

{¶ 14} "Issuance of a bond forfeiture order does not relieve a permittee from the responsibility for complying, and does not prevent the permittee from being subject to civil penalties for not complying with any order or notice of violation issued for conditions existing on the entire permit area or the incremental area, when applicable." Ohio Adm.Code 1501:13–7–06(D).

{¶ 15} This language plainly indicates that a bond forfeiture order does not necessarily relieve liability.

{¶ 16} Furthermore, R.C. 1513.18(E) states that in the event of forfeiture, if the money forfeited is insufficient to finance the completion of reclamation, the permittee is liable for the remaining funds required to finish the reclamation process. During the reclamation process the money required to finish the process may be borrowed from the reclamation forfeiture fund. R.C. 1513.18(E). However, the permittee is liable for the money that is borrowed from the

reclamation forfeiture fund. R.C. 1513.18. Accordingly, the permittee's liability extends even after money has been forfeited.

{¶ 17} Given all of the above law, liability does not cease until reclamation is completed and any liability to repay money expended from the forfeiture fund has been determined. Furthermore, the statutes make no exception that the commission can terminate liability prior to the above mandates. Therefore, the commission's ruling that John Glenn's liability ceased upon forfeiture despite the fact that Phase III of reclamation was not completed is inconsistent with the law. Accordingly, this assignment of error has merit. The commission's decision as to the termination of liability is vacated, and the cause is remanded.

## ASSIGNMENT OF ERROR NO. TWO

{¶ 18} "The commission erred when it ruled to reduce the bond forfeiture amount from the minimum statutory requirement of $10,000.00 to the amount of $1,875.00."

{¶ 19} The chief's order held that John Glenn must forfeit $10,250 of the performance bond for failure to complete reclamation. The commission found this holding to be "arbitrary, capricious or otherwise inconsistent with the law." The commission consequently lowered the amount to be forfeited to $1,875. The commission acknowledged the statutory obligation to sustain a $10,000 minimum bond. However, as discussed in the previous assignment of error, the commission found that forfeiture liability ceased, and therefore the duty to maintain the minimum bond also ceased. In accordance with that reasoning, the commission released the entire performance bond except for the $1,875 it had determined must be forfeited.

{¶ 20} The division finds fault with the commission's action of releasing the minimum bond before liability ceased. It also argues that the commission erred in lowering the amount of money to be forfeited. The division believes that the $10,000 bond remains and should be forfeited in its entirety. Each of these arguments will be addressed separately.

## RELEASE OF MINIMUM BOND

{¶ 21} As stated above, when the commission determined that the amount of forfeiture ordered by the chief was "arbitrary, capricious or otherwise inconsistent with the law," the commission lowered the amount to be forfeited and released John Glenn from liability. Under the first assignment of error, we explained how the release from liability is inconsistent with the law as it is currently written. Therefore, given our holding, the issue becomes whether the

minimum bond requirement can be extinguished before completion of reclamation and liability.

{¶ 22} R.C. 1513.08(A) requires that a mining company post a performance bond before it can obtain a mining permit. The code fixes the bond at $2,500 times the number of acres sought to be mined; however, the bond cannot be less than a minimum of $10,000. R.C. 1513.08(A); Ohio Adm.Code 1501:13–7–02(A). Additionally, the return of the bond is therein stated as "conditioned upon faithful performance of all the requirements of this chapter and the permit." R.C. 1513.08(A). Ohio Adm.Code 1501:13–7–02(B) explains that the minimum bond amount shall be maintained on deposit until the permittee is released from *all* liability in accordance with Ohio Adm.Code 1501:13–7–05.

{¶ 23} Since liability is not released until reclamation is completed, the minimum bond amount, $10,000, must be maintained throughout the entire reclamation process. In the matter before us, reclamation was not completed on the five acres of land. Accordingly, John Glenn's liability was not extinguished. Therefore, a minimum bond of $10,000 must be maintained.

## FORFEITURE AMOUNT

{¶ 24} The commission lowered the forfeiture amount from $10,250 to $1,875. It held that the chief's calculation of $10,250 was inconsistent with the law because John Glenn should be given full credit for completion of Phase I and Phase II of reclamation. The commission stated, "if full credit is not given for successful reclamation releases, operators on small areas are unfairly penalized where they have done the reclamation work necessary for some, but not all, of the phase releases."

{¶ 25} The division argues that this ruling is motivated by sympathy, contrary to law, and results in a windfall for John Glenn. Accordingly, it contends that the minimum bond is to be forfeited when a permittee fails to complete reclamation.

{¶ 26} The code provides an unambiguous formula to determine the amount of the performance bond to be forfeited. Ohio Adm.Code 1501:13–7–06(C)(1). The forfeiture amount is equal to the difference between the number of acres in the entire permit area or the incremental area, times the per acre rate at which the performance bond was filed for that incremental area; and the amount of bond already released on the entire permit area or the incremental area. Ohio Adm.Code 1501:13–7–06(C)(1).

{¶ 27} The permit, in the case at hand, was for over 160 acres. However, a performance bond was only being held on the five acres that were actually mined. The per acre rate is $2,500. Therefore, the performance bond for the five-acre

tract of land that was mined was $12,500. The determination of the forfeiture amount is the difference between $12,500 and the amount of the bond already released. Ohio Adm.Code 1501:13–7–06(C)(1).

{¶ 28} The amount of the bond already released on the permit is determined by the phases that have been completed in reclamation. Ohio Adm.Code 1501:13–7–05(B)(3). When Phase I is completed, 50 percent of the bond for that area of land is released. Ohio Adm.Code 1501:13–7–05(B)(3)(a). After Phase II is completed, the "chief shall release performance bond liability in an amount not exceeding thirty-five per cent of the original bond." Ohio Adm.Code 1501:13–7–05(B)(3)(b). When Phase III is completed, the remaining bond must be released. Ohio Adm Code 1501:13–7–05(B)(3)(c).

{¶ 29} In the case at hand, Phase I and Phase II were completed and an order issued for the release of the bond for those two phases. For the five-acre tract of land we are discussing, the bond is $12,500. After completion of Phase I, $6,250 could be released. After completion of Phase II another $4,375 could be released. This would leave $1,875 to be released after completion of Phase III. Therefore, the commission could determine that the forfeiture was $1,875, since John Glenn completed Phase I and Phase II and was released from liability for those phases. The commission's alteration of the forfeiture amount is not arbitrary, capricious, or otherwise inconsistent with the law. Therefore, we affirm the modification of forfeiture.

{¶ 30} However, as stated above, the amount of money in a bond account could never drop below $10,000 until all liability is released. In a situation like the one before us, where the amount of land is small and therefore the performance bond is barely above the minimum requirement, the permittee is going to receive very little money back upon completion of Phase I and Phase II. However, this does not mean that a permittee who fails to complete reclamation does not get credit for the phases it completes. Despite the fact that John Glenn is entitled to receive all but $1,875 of its performance bond back, $10,000 must remain in the performance bond account. Therefore, the minimum bond amount now consists of $1,875, which is forfeited, and $8,125, which belongs to John Glenn.

{¶ 31} Although John Glenn forfeits only $1,875 at this time, it is liable to the state for any expenses beyond the forfeited amount that are necessary for the full reclamation of the land. R.C. 1513.18(C). However, if the amount forfeited is greater than the total required to complete the land work, John Glenn will not receive the difference. Instead, the excess money is placed into the Reclamation Forfeiture Fund and later used to cover reclamation costs of other forfeited lands until the money is recovered from those permittees. R.C. 1513.18. Thus, the act

does not create a windfall to either the permitter or the permittee, but rather is a reasonable attempt to ensure compliance by the permittees.

{¶ 32} This assignment of error contains some merit. The duty to maintain the minimum bond amount does not cease until the permittee is released from all liability. The mere existence of a minimum bond does not automatically mean the entire sum shall be forfeited upon default.

{¶ 33} For the foregoing reasons, the decision of the commission is hereby affirmed with regards to the amount of forfeiture. However, the judgment terminating John Glenn's liability and releasing the minimum bond amount is vacated and this cause is remanded to the commission for further proceedings according to law and consistent with this court's opinion.

Judgment accordingly.

GENE DONOFRIO and DEGENARO, JJ., concur.